UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MUNICIPALITY OF SABANA GRANDE<br><br>Defendant. | CIVIL NO. 19-2090<br><br><br><br>FALSE CLAIMS ACT<br>31 U.S.C. §§ 3729 et seq. |

COMPLAINT FOR CONSENT JUDGMENT

TO THE HONORABLE COURT:

COMES NOW the United States of America, by and through the undersigned attorneys, and very respectfully alleges and prays:

## INTRODUCTION

1.     The United States files this action under the False Claims Act, 31 U.S.C. §§ 3729 et seq., to recover damages and civil monetary penalties from the defendant's contended false claims to the Puerto Rico Department of Education ("PRDE") and the United States Department of Education ("USDE") made in violation of federal law and applicable statutory provisions.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1345 and its general equitable jurisdiction; as well as subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, since the civil action arises under the laws of the United States, in particular, 31 U.S.C. §§ 3729, 3730.

3.     This Court has personal jurisdiction over defendant, a governmental municipality of

1

Puerto Rico, and that transacts business within the District of Puerto Rico.

4.      Venue is proper in this District under 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a).

Defendant's municipal offices are located within the District of Puerto Rico.

## PARTIES

5.      The plaintiff is the United States of America, on behalf of its United States Department of Education, hereinafter referred to as "USDE".

6.      Defendant Municipality of Sabana Grande ("MSG"), was at all times relevant, a governmental municipality of Puerto Rico authorized to enter into contracts with other public and private entities involving federal funds for the benefit of its constituency.

## TITLE II, PART A OF THE ELEMENTARY AND SECONDARY EDUCATION ACT OF 1965 ("ESEA") PROGRAM

7.      Except as otherwise specifically noted, the allegations set forth below describe the ESEA Program and other facts during the period relevant to this action, that is, the year of 2014.

8.      The PRDE was organized under Article V, section 6 of the Constitution of the Commonwealth of Puerto Rico.  The PRDE is responsible for the planning and administration of all public elementary, secondary and some post-secondary education throughout Puerto Rico.

9.      The PRDE administers various federal financial assistance programs funded by the USDE intended for students in public and private schools.  The PRDE receives funds under Title II, Part A of ESEA, as reauthorized by the No Child Left Behind Act of 2001 ("NCLB"), to provide financial assistance to local education agencies in order to increase student achievement through strategies such as improving teacher and principal quality and increasing the number of highly

qualified teachers, principals and assistant principals in local schools.[1]

10.     The PRDE was permitted to use Title II funds allocated to them to pay for, among other things, educational projects to carry out its mission following federal and state policies and regulations, to include training of qualified teachers.

11.     The Office of Inspector General of the Department of Education ("OIG") is responsible for identifying fraud, waste, abuse, and criminal activity involving the Department of Education funds, programs and operations.  The OIG conduct independent audits and other reviews and criminal and civil investigations.

### STATEMENT OF FACTS

12.     The United States contends that on or about April of 2014, MSG, in conjunction with Mr. Irving Riquel Torres ("Torres"), through Torres' private company Administrative, Environmental and Sports Consultants ("AESC"), and members of the Puerto Rico Olympic Committee ("COPUR"), entered into a contract involving USDE funds whereby MSG subcontracted COPUR and AESC to provide teachers' training for the municipality's public school teachers.  Based on the rules governing the USDE grant funds provided to PRDE, MSG was precluded from subcontracting the services for teachers' training to non-governmental entities. This arrangement resulted in MSG submitting or causing to submit false statements, false records and false representations to PRDE for purposes of obtaining federal funding under Title II, Part A of ESEA.  An investigation conducted by the USDE Office of Inspector General ("ED-OIG") showed that these false representations caused the PRDE to disburse approximately $1,770,200.00 to MSG, which in turn disbursed the sum of $1,378,212.00 to COPUR in violation of the

---

[1] This program was amended by the Every Student Succeeds Act of 2015.

program's applicable statutes and regulations, to include MSG's subcontracting of COPUR to provide educational training services.  Subsequently, COPUR disbursed approximately $439,587.55 as costs of the project, $375,449.78 to AESC, and retained the sum of $563,174.67 as proceeds for serving as an intermediary between MSG and AESC.  MSG also retained $391,988.00 as proceeds that were not authorized under federal law.

13.     The United States contends that it has certain civil claims as a result of MSG's contended actions as described in paragraph 12 and arising from the above referenced entities' participation in the undue submission of payment invoices to the PRDE for services provided in violation of the applicable statutory and regulatory requirements.  The payment invoices submitted to the PRDE include payments that MSG subsequently disbursed to COPUR and AESC, even though the applicable regulations precluded MSG from subcontracting the educational services to COPUR and AESC.  The United States contends that the above referenced payment invoices, including MSG invoices or claims, constitute illegal claims against the United States under the False Claims Act, 31 U.S.C. § 3729, et seq.  The conduct described in paragraphs 12 and 13 shall be referred to below as the "Covered Conduct."

## CLAIM FOR RELIEF

### False Claims Act− 31 U.S.C. § 3729 (a) (1)

14.     This is a claim for damages and civil monetary penalties under the False Claims Act, 31 U.S.C. § 3729 (a) (1).

15.     Paragraphs 1 through 13 of this Complaint are hereby re-alleged and incorporated as though fully set forth herein.

16.     As part of the scheme to defraud and described as the covered conduct, the United States contends that MSG submitted and caused to be submitted claims for payment to the PRDE for contractual services awarded in violation of the program's applicable statutes, regulations, and federal law.

17.     Under the FCA, a "claim" includes requests for money presented to agents of the United States or to a contractor, grantee or other recipient, if the money is to be used on the government's behalf or to advance a government interest, as long as the United States provided any portion of the money requested.

18.     The United States contends that each of these false statements constitute a unique claim of provider of services fraud on a grantee or other recipient of moneys to be used on the government's behalf or to advance a government interest for which the United States provided the money requested.  As such, damages, as well as civil monetary penalties, must be assigned as allowed by law in an amount ranging from $11,181.00 to $22,363.00 each.

19.     On November 20, 2019, the parties in this action reached a Settlement Agreement in which MSG agreed to pay $500,000.00 in U.S. Currency, plus interest, as damages and civil monetary penalties, to be paid off subject to an installment payment plan.  The parties will subsequently filed a Stipulation for Consent Judgment.  The Settlement Agreement's terms govern the disposition of the claims raised in this Complaint for Consent Judgment and are adopted herein. The Settlement Agreement and the resulting payments are neither an admission of liability or wrongdoing by MSG of the facts previously exposed, nor a concession by the United States that its claims are not well founded.  As stated in the Settlement Agreement, MSG denies any liability and agreed to enter into an agreement for the compromise of the disputed claims to avoid the undue

delay, uncertainty and costs of litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully prays this Honorable

Court for judgment against MSG, in the principal amount of $500,000.00, plus interest at the

prevalent legal rate from the date of judgment; in addition to costs and attorney fees or the 10%

surcharge imposed by law if plaintiff is forced to use the remedies provided under subchapters B

or C of the Federal Debt Collection Procedures Act of 1990.  28 U.S.C. § 3011, in the event

defendant defaults as provided in the Settlement Agreement, and such other and further relief as

this Court deems just and proper.


RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, this 22nd day of November 2019.

W. STEPHEN MULDROW
United States Attorney

*/s Jorge L. Matos*
Jorge L. Matos
Assistant U.S. Attorney
Civil Division
USDC No. G01307
Torre Chardon, Room 1201
350 Carlos Chardon Avenue
San Juan, PR 00918
Tel. (787) 282-1814
Fax. (787) 766-6219
E-mail: Jorge.L.Matos2@usdoj.gov

## ATTACHMENT 1: CIVIL COVER SHEET

JS 44   (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Municipality of Sabana Grande |

| **(b)** County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Jorge L. Matos, Assistant U.S. Attorney<br>U.S. Attorney's Office, 350 Chardon Ave., Suite 1201<br>Hato Rey, PR 00918 Tel: 787-766-5656 | Attorney Cesar Molina Aponte<br>Pedro Ortiz Alvarez, LLC<br>P.O. Box 9009, Ponce, PR 00732 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☒ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.C. Section 3729 et seq.

Brief description of cause:
False Claims Act cause of action

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 500,000.00

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
11/22/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# ATTACHMENT 2: CATEGORY SHEET

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

---

## CATEGORY SHEET

---

**You must accompany your complaint with this Category Sheet, and the Civil Cover Sheet (JS-44).**

---

| | |
|---|---|
| Attorney Name (Last, First, MI): | Matos, Jorge L. |
| USDC-PR Bar Number: | G-01307 |
| Email Address: | Jorge.L.Matos2@usdoj.gov |

---

1. Title (caption) of the Case (provide only the names of the <u>first</u> party on <u>each</u> side):

   Plaintiff: United States of America

   Defendant: Municipality of Sabana Grande

2. Indicate the category to which this case belongs:

   ☒ Ordinary Civil Case

   ☐ Social Security

   ☐ Banking

   ☐ Injunction

3. Indicate the title and number of related cases (if any).



4. Has a prior action between the same parties and based on the same claim ever been filed before this Court?

   ☐ Yes

   ☒ No

5. Is this case required to be heard and determined by a district court of three judges pursuant to 28 U.S.C. § 2284?

   ☐ Yes

   ☒ No

6. Does this case question the constitutionality of a state statute?  (See, Fed.R.Civ. P. 24)

   ☐ Yes

   ☒ No

Date Submitted: 11/22/19

rev. Dec. 2009

[ Print Form ]    [ Reset Form ]

# EXHIBIT A: Settlement Agreement

## PRIVATE SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between the United States of America, acting through the United States Attorney's Office, District of Puerto Rico and on behalf of the **United States Department of Education** (collectively the "United States") and the Municipality of Sabana Grande (hereinafter collectively referred to as "the Parties") in order to provide for certain payments in full settlement and discharge of all claims between them which are, or might have been, a subject matter of the claim, upon the terms and conditions set forth below:, through their authorized representatives.

## GENERAL PROVISIONS



A.      The United States Department of Education ("USDE") is an agency of the United States of America.

B.      Municipality of Sabana Grande ("MSG") is a municipality of Puerto Rico, with a form of government composed of an elected mayor and a municipal legislature.



C.      The United States alleges that beginning on or about April of 2014, MSG, in conjunction with Mr. Irving Riquel Torres ("Torres"), through Torres' private company Administrative, Environmental and Sports Consultants ("AESC"), and members of the Puerto Rico Olympic Committee ("COPUR"), submitted or caused to be submitted false statements, false records and false representations to the Puerto Rico Department of Education ("PRDE") for purposes of obtaining federal funding under Title II, Part A ("Title II") of the Elementary and Secondary Education Act of 1965 ("ESEA"). An investigation conducted by the USDE Office of Inspector General ("ED-OIG") showed that these false representations caused the PRDE to disburse approximately $1,770,200.00 to MSG, which in turn disbursed the sum of

$1,378,212.00 to COPUR in violation of the program's applicable statutes and regulations, to include MSG's subcontracting of COPUR to provide educational training services. Subsequently, COPUR disbursed approximately $439,587.55 as costs of the project, $375,449.78 to AESC, and retained the sum of $563,174.67 as proceeds for serving as an intermediary between MSG and AESC. MSG also retained $391,988.00 as proceeds. MSG denies the aforementioned allegations and does not admit liability regarding them.

D. The United States contends that it has certain civil claims as a result of MSG's alleged actions as described in paragraph C and arising from the above referenced entities' participation in the undue submission of payment invoices to the PRDE for services provided in violation of the applicable statutory and regulatory requirements. The payment invoices submitted to the PRDE included alleged payments that MSG subsequently disbursed to COPUR and AESC, even though the applicable regulations precluded MSG from subcontracting the educational services to COPUR and AESC. The United States contends that the above referenced entities' payment invoices, including COPUR, MSG and AESC invoices or claims, constitute illegal claims against the United States under the False Claims Act, 31 U.S.C. § 3729, et seq. MSG denies these allegations and does not admit liability regarding them. For purposes of the Agreement, the conduct described in paragraphs C and D shall be referred to below as the "Covered Conduct." MSG denies the aforementioned allegations and does not admit liability regarding them.

E. This Agreement and the resulting payments are neither an admission of liability by MSG of the facts previously exposed, nor a concession by the United States that its claims are not well-founded. Moreover, it is understood and agreed to by the parties that this Agreement is a compromise of disputed claims.

2

F.     In relation to the above-mentioned Covered Conduct, the United States has engaged in substantial settlement conversations with MSG after which the Parties have reached the instant Agreement.   To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligation of this Agreement, the Parties agree and covenant as follows:

**TERMS AND CONDITIONS**

1.     MSG shall pay to the United States of America the amount of **FIVE HUNDRED THOUSAND DOLLARS ($500,000.00)** ("Settlement Amount") in damages and civil penalties, in addition to interest on the Settlement Amount at the prevailing rate under the Federal Debt Collection Procedures Act ("FDCPA") (28 U.S.C. § 3011), from the date of judgment, to be paid under the terms specified below.  The parties further agree pursuant to Section 523 of the U.S. Bankruptcy Code, that for purposes of the United States Bankruptcy Code, 11 U.S.C. §§101 et seq., or any successor statute, the amounts due hereunder are not dischargeable.     The aforementioned sum will be paid in the following payment schedule:



2.     A first payment of **ONE HUNDRED TEN THOUSAND DOLLARS ($110,000.00)**.  This payment is due at the time the Agreement is signed.

3.     Over a period of 60 months, beginning on or before December 15, 2019, MSG will pay the remaining **THREE HUNDRED NINETY THOUSAND DOLLARS ($390,000.00)**.  Payments will be made by MSG in monthly installment payments, to include interest. Subsequently, and on the 15th day of each month thereafter, MSG shall make payments of $6,500.00, in full satisfaction of the monies owed under this Agreement, plus interest at the legal rate established for from the date of judgment as provided by law, under the FDCPA.

3

4. Payment to the United States shall be made by certified, manager's or cashier's check, or money order, payable to the United States Department of Justice. MSG shall send the monthly payment accompanied by a properly completed Department of Justice (DOJ) monthly statement payment coupon. The check or money order must include the United States Attorney's Office CDCS number, which will be subsequently provided to MSG, and mailed to the following address: U.S. Department of Justice, Nationwide Central Intake Facility, PO Box 790363, St. Louis, MO 63179-0363. If the monthly payment coupon is not received by MSG, a check or money order payable to the U.S. Department of Justice shall still be mailed to: U.S. Attorney's Office, Attention: Financial Litigation & Asset Recovery Section, #350 Chardon Street, Suite 1201, Carlos Chardon Avenue, San Juan, PR 00918. The United States Department of Justice will in turn credit the payments per the agency's applicable payment procedures.

5. In the event that MSG fails to pay any amount as provided in paragraph 3 above within (5) business days of the date on which such payment is due, MSG shall be in Default ("Default") of its payment obligations. The United States will provide written notice of the Default to MSG and MSG shall have the opportunity to cure such Default within five (5) business days from the date of receipt of the notice. Notice of Default will be delivered to MSG at the following address: Municipality of Sabana Grande, 54, 42 Calle Angel, Gregorio Martinez, Sabana Grande, Puerto Rico 00637. If MSG fails to cure such Default within five (5) business of receiving the Notice of Default, the remaining unpaid balance of the Agreement Amount shall become immediately due and payable. The amount owed will bear post judgment interests at the legal rate, as provided by law, over the unpaid principal. Any payments made will be applied first to interest earned and accrued through the day of payment and the balance, if any, will be applied to principal. Plaintiff at its sole discretion may proceed to execute the Judgment for the

4

remaining total amount due, plus interest, costs, attorney's fees; and, the 10% surcharge if forced to utilize any of the remedies under subchapters B or C of the FDCPA.

6.      MSG has agreed to a Consent Judgment in the amount of the unpaid balance based on this Agreement, and has agreed not to plead, argue, or otherwise raise any defenses opposing any motions seeking enforcement of this Agreement. The United States, at its sole option, may also: (a) proceed to execute the Judgment in this case approving the Agreement and the Stipulation for Consent Judgment, for the remaining total amount due, plus interests, costs, attorney's fees; and the 10% surcharge if forced to use any of the remedies under the applicable subchapter of the FDCPA; (b) offset the remaining unpaid balance from any amounts due and owing to MSG by any department, agency, or agent of the United States at the time of Default; (c) file a civil action, or a motion to enforce this Agreement in any related pending civil matter in the event of Default; (d)  register and/or enforce any lien that may be filed in the Property Registries pertaining to this case or (e) exercise any other rights granted by law or in equity, including referral of this matter for private collection. As such, MSG agrees not to object to the United States requesting from the Court the authorization to file Notices of Lien in the Property Registries in this case, or to the United States filing them when deemed appropriate.

7.      MSG agrees not to contest any consent judgment, offset, or any collection action undertaken by the United States pursuant to paragraphs 5 and 6 above, either administratively or in any state or federal court. MSG recognizes that the schedule of payments is merely a minimum schedule of payments and not the only method of enforcement, nor a limitation on the methods, and that the United States may use, in addition to, other available means to enforce the judgment such as garnishments and court debtor examinations among other methods.

8.    The parties further agree that if MSG, during the duration of the aforementioned payment plan, develop the ability to pay in full the outstanding monies owed to the United States, MSG may do so in a lump sum.  MSG agrees to furnish any financial documents requested by the Government and submit to financial evaluation(s) when circumstances change and until all the monetary penalties have been satisfied.  MSG further agrees to notify the United States Attorney's (Financial Litigation & Asset Recovery Section), when transferring or receiving any interest in property with a value exceeding $1,000.00 owned directly or indirectly, individually or jointly by MSG, including any interest held or owned under any other name, including trusts, partnerships and/or corporations while the debt remains outstanding.

9.    Subject to the exceptions in paragraph 10 (concerning excluded claims) below, and conditioned upon MSG's full payment of the Settlement Amount, and subject to paragraph 15, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases MSG, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former owners; and officers, directors, and affiliates; and the successors and assigns of any of them, as well as the corporation's officers, agents, servants, and employees from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment and fraud.

10.    Notwithstanding the release given in paragraph 9 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and not released:

6

a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.    Any criminal liability;

c.    Except as explicitly stated in this Agreement, any administrative liability; including mandatory or permissive exclusion from federal programs;

d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.    Any liability based upon obligations created by this Agreement;

f.    Any liability of individuals not released in this Agreement.

11.    Nothing in this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue Laws, Title 26 of the United States Code.

12.    MSG has made financial disclosure statements (Financial Statements) to the United States and the United States has relied on the accuracy and completeness of those Financial Statements as basis in fact in reaching this Agreement.   MSG warrants that the Financial Statements are complete, accurate, and current.   If the United States learns of any material misrepresentations made pursuant to "bad faith motives", and not by mere inadvertence, by MSG in the financial disclosures made to the United States, the United States may at its option:   (a) rescind this Agreement and file suit [OR reinstate its suit] based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount.   MSG agrees not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.   It is understood that MSG will have the right to contest the existence of misrepresentation and/or bad faith motives.

13.     In the event that the United States, pursuant to paragraph 12 (concerning material misrepresentation in the disclosure of assets), above, opts to rescind this Agreement, MSG agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States pursuant to the Covered Conduct.

14.     MSG warrants that they have reviewed their financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount.  Further, the signatory Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to MSG, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the signatory Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which MSG was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

15.     If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, MSG commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of MSG's debts, or seeking to adjudicate MSG as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other

similar official for MSG or for all or any substantial part of MSG's assets, MSG agrees as follows:

   a. MSG's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and MSG shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) MSG's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) MSG was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to MSG.

   b. If MSG's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against MSG for the claims that would otherwise be covered by the releases provided by this Agreement. MSG agrees that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this paragraph, and MSG shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) MSG shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within ninety (90) calendar days of written notification to MSG that the releases have been rescinded pursuant to this paragraph,; and (iii) the United States has a valid claim against MSG in the amount of **ONE MILLION**

**ONE HUNDRED SEVENTY-FIVE THOUSAND NINE HUNDRED AND SIXTY-FOUR DOLLARS ($1,175,964.00)**, in addition to civil monetary penalties between $11,181.00 and $22,363.00 per false claim, and project replacement costs, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this paragraph, as well as in any other case, action, or proceeding, less any payment received by the United States in conformity with this agreement.

      c.     MSG acknowledges that its agreements in this paragraph are provided in exchange for valuable consideration provided in this Agreement.

      16.     In the event of a voluntary or involuntary liquidation or reorganization case by or against MSG under bankruptcy, receivership or other insolvency law, MSG agrees not to contest or oppose any motion filed by the United States seeking relief from or modification of the automatic stay imposed by 11 U.S.C. § 362(a) nor to seek relief under 11 U.S.C. § 105 to enjoin or restrain the United States from recovering monies owed by MSG arising out of this Agreement or its underlying relationship with the United States related to the Covered Conduct through offset. MSG recognizes that this express waiver is in consideration for the final settlement of the claims set forth in the Complaint under 31 U.S.C. 3729, et seq.

      17.     MSG fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that MSG has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

18.     a.   Unallowable Costs Defined:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of MSG, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)   the matters covered by this Agreement;

(2)   the United States' audit(s), civil, or criminal investigation(s) of the matters covered by this Agreement;

(3)   MSG's investigation, defense, and corrective actions undertaken in response to the United States' audit(s), civil, or criminal investigations(s) in connection with the matters covered by this Agreement (including attorney's fees):

(4)   the negotiation and performance of this Agreement;

(5)   the payment MSG makes to the United States pursuant to this Agreement, are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b.     Future Treatment of Unallowable Costs:   Unallowable Costs will be separately determined and accounted for by MSG, and MSG shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.     This Agreement does not bar the United States from assessing and contesting any prior unallowable costs that may have been submitted for payment by MSG.

d.     This Agreement will not prohibit or otherwise limit MSG's ability to charge any current or future monetary impact that may be deemed as an allowable cost incurred in this proceeding.

19.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

20.     Each party and signatory to this Agreement represents that each has consulted their respective legal representatives regarding the implications and consequences of rights and concessions, under the False Claims Act and other applicable laws, made by each signatory of this Agreement, and that as such all have signed and entered into this Agreement freely and voluntarily; without any degree of duress or compulsion.

21.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Puerto Rico.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

22.     This Agreement constitutes the complete agreement between the Parties as to the covered conduct.  This Agreement may not be amended except by written consent of the Parties.

23.     In the event any provision of this Agreement shall be determined to be illegal, invalid, or unenforceable as a matter of law or otherwise, as determined by a court with competent jurisdiction and venue, the remaining portions of the Agreement shall not be invalidated and shall be deemed to remain in full force and effect.

24.     The undersigned counsel(s) or any other signatory represent and warrant that they are fully authorized to execute this Agreement on behalf of the United States and MSG respectively.

12

25.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

26.     This Agreement is binding on MSG's successors, transferees, heirs, and assigns.

27.     All parties agree and recognize that although this Agreement has been signed and entered into outside court publicity, the United States of America and MSG are not bound by any confidentiality.  Furthermore, any person or entity may request a true copy of this Agreement pursuant to the Freedom of Information Act, 5 U.S.C. § 552.

28.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

29.     Pursuant to this agreement, MSG is aware that the United States will file a Complaint for Consent Judgment in the United States District Court for purposes of enforcement of this agreement.  Accordingly, MSG consents to having the court enter judgment approving this Agreement, and retaining jurisdiction for enforcement purposes.

Executed in San Juan, Puerto Rico, this_____day of November, 2019.

W. STEPHEN MULDROW
United States Attorney


_____
Jorge L. Matos
Assistant U.S. Attorney

Civil Division
Attorney for the United States and the
United States Department of Education
_____


_____
Cesar Molina
Attorney for MSG

Dated:


20 NOV. 19
_____

13

Hector E. Ramirez-Carbo
Assistant U.S. Attorney

Chief Civil Division
Attorney for the United States and
United States Department of Education

Noel Matias Borrelli
Interim Mayor
MSG